## STATE of Wisconsin, Plaintiff-Respondent,

## v.

## Thomas RUSH, Defendant-Appellant.†

Court of Appeals

*No. 88–0083–CR. Submitted on briefs September 9, 1988.—*
*Decided October 26, 1988.*

(Also reported in 432 N.W.2d 688.)

† Petition to review denied. BABLITCH, J., took no part.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ruth S. Downs,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general and *Barry M. Levenson,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   Thomas Rush appeals from a judgment of conviction for party to the crime of aggravated battery by use of a dangerous weapon, contrary to secs. 940.19(2), 939.05, and 939.63, Stats.; party to the crime of armed robbery, contrary to secs. 943.32(1)(a) and (2), and 939.05, Stats.; and attempted strong armed robbery, contrary to secs. 943.32(1)(a) and 939.32, Stats. Rush argues that the trial court committed reversible error when evidence that had been suppressed during his trial was considered for the purpose of determining his sentence. We reject this argument and conclude that a trial court may consider suppressed evidence in determining a proper sentence. Therefore, we affirm the judgment of conviction.

Late on July 16, 1986, and very early the next morning, Joseph Lawlor was sleeping in his yellow van parked outside the Victory Bar in Racine. Rush and two other men entered the van, beat Lawlor with a tire iron and stole his watch. They then drove off in the van with Lawlor still inside. Eventually, Lawlor escaped.

Around 3:00 a.m. on July 17, Michael Glassen was with Norb Kosterman when Glassen heard some faint cries for help coming from the direction of the yellow van. He went to investigate and was grabbed by two

men who attempted to rob him. Glassen subsequently identified one of the men as Rush. When Kosterman realized that Glassen was being assaulted, he got a handgun from the trunk of his car and ran to assist Glassen. Kosterman shouted at the assailants and fired a shot toward the ground as they fled.

A short time later, around 3:30 a.m., Rush checked into the emergency room of St. Luke's Hospital in Racine to seek treatment for a gunshot wound to his right ankle. The hospital reported this incident to the authorities. A Racine police officer went to the hospital to investigate. The officer searched Rush's clothes and found the watch that had been stolen from Lawlor.

During the trial the watch was suppressed as the product of an illegal search. At the sentencing hearing, the prosecutor drew the trial court's attention to Rush's statements that he had nothing to do with the incidents and which branded the victims as "liars." Rush's counsel also pointed out that, in his opinion, the evidence was "surprisingly thin in many regards." In response, the trial court noted:

> Since we're talking about the evidence, the Court suppressed the most damaging piece of evidence when it kept out the physical evidence, the loot, in his pocket. How would you have handled that if that was in, Mr. Michelson [Rush's attorney]? You know, the single most—the case was very strong, but, you know, the strongest piece of evidence the Court kept out. How is [sic] Mr. Rush and you going to handle that in defense, because obviously it wasn't relevant at the trial, but it certainly, I think, was something we might consider here, since Mr. Rush is saying it's still mistaken, and he's not the right person.

The trial court imposed the maximum sentence.

This appeal presents a question of first impression in Wisconsin. We are compelled to address the conflicting policies behind two well-settled doctrines of criminal procedure, the so-called "exclusionary rule" and the principle that a sentencing court should have access to a broad range of information when determining a proper sentence.

Rush contends that his federal and state constitutional rights to be protected against unreasonable searches and seizures were violated by the trial court's consideration of the suppressed evidence. U.S. Const. amend. IV and XIV; Wis. Const. art. I, sec. 11. This issue concerns a question of constitutional fact which we review independently as a question of law. *See State v. Woods,* 117 Wis. 2d 701, 715–16, 345 N.W.2d 457, 465 (1984).

■

The exclusionary rule provides that illegally obtained evidence may not be introduced against a criminal defendant. The purpose of the rule is to discourage illegal and unconstitutional acts by law enforcement officials. *See Mapp v. Ohio,* 367 U.S. 643, 657–58 (1961). The issue here is whether the exclusionary rule should be extended to sentencing procedures.

Rush urges us to adopt the rationale of *Verdugo v. United States,* 402 F.2d 599 (9th Cir. 1968), *cert. denied sub nom. Turner v. United States,* 397 U.S. 925 (1970), *cert. denied,* 402 U.S. 961 (1971). However, Rush's reliance upon this case is misplaced. In *Verdugo,* the Court of Appeals for the Ninth Circuit stated: "We conclude that where, as here, the use of illegally seized evidence at sentencing would provide a substantial incentive for unconstitutional searches and seizures, that evidence should be disregarded by the sentencing

judge." *Id.* at 613. In a subsequent case the Ninth Circuit construed its conclusion in *Verdugo* very narrowly:

> Although *Verdugo* places some restrictions upon information which the sentencing judge may consider, it does not hold that evidence seized in violation of the Fourth Amendment may never be considered in sentencing .... On the contrary, *Verdugo* is most easily read to require exclusion only where the contrary result would provide a substantial incentive for illegal searches ....

*United States v. Vandemark,* 522 F.2d 1019, 1022–23 (9th Cir. 1975).

■

Here we see no basis for a claim that consideration of the suppressed evidence at sentencing will inspire or encourage illegal searches.

Applying the exclusionary rule at sentencing, after it has already been applied at the trial, would not significantly contribute to the rule's deterrent effect. *United States v. Schipani,* 435 F.2d 26, 28 (2d Cir. 1970), *cert. denied,* 401 U.S. 983 (1971). In *United States v. Lee,* 540 F.2d 1205 (4th Cir.), *cert. denied,* 429 U.S. 894 (1976), the Court of Appeals for the Fourth Circuit stated:

> We think that if the exclusionary rule were extended to sentencing in the ordinary case, its additional deterrent effect would be so minimal as to be insignificant. Generally, law enforcement officers conduct searches and seize evidence for purposes of prosecution and conviction—not for the purpose of increasing a sentence in a prosecution already pending or one not yet begun. If they are to be deterred from official lawlessness, it

would seem obvious that the only effective deterrence is the threat that the prosecution arising out of the specific search and seizure in which they acted illegally would be rendered ineffective. The additional threat that a future sentence might be less severe because they acted unlawfully can be predicted to have little practical effect to accomplish its main objective.

*Id.* at 1211. We find this rationale to be persuasive.

Applying the exclusionary rule to sentencing would also unduly restrict a trial court's access to a broad range of evidence in determining a proper sentence. "The *responsibility* of the sentencing court is to acquire full knowledge of the character and behavior pattern of the convicted defendant before imposing sentence." *Elias v. State,* 93 Wis. 2d 278, 285, 286 N.W.2d 559, 562 (1980) (emphasis added).

The importance of allowing a sentencing judge to consider a broad range of evidence was expressed by Justice Black in *Williams v. New York,* 337 U.S. 241 (1949):

Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial.

*Id.* at 247 (footnote omitted). Our supreme court has also espoused this principle:

230

> Not only is all relevant information to be brought to the attention of the sentencing judge, but considerable latitude is to be permitted trial judges in obtaining and considering all information that might aid in forming an intelligent and informed judgment as to the proper penalty to be imposed.

*Neely v. State,* 47 Wis. 2d 330, 334–35 177 N.W.2d 79, 82 (1970).

Since we see no risk that illegal searches will be encouraged, there was no error in using the suppressed evidence to determine a proper sentence.

*By the Court.*—Judgment affirmed.