STATE of Wisconsin, Plaintiff-Respondent,

v.

Steven L. GUZMAN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 90–1652–CR. Oral argument October 30, 1991.—Decided March 3, 1992.*

(Also reported in 480 N.W.2d 446.)

For the defendant-appellant-petitioner there was a brief by *Larry D. Steen* and *Godfrey, Neshek & Worth, S.C.,* Elkhorn and oral argument by *Mr. Steen.*

For the plaintiff-respondent the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

DAY, J. This is a review of a published decision of the court of appeals,[1] which affirmed a judgment and order of the Circuit Court for Walworth County, Honorables Robert J. Kennedy and John R. Race, judges, holding the search of Steven Guzman, in the form of urinalysis, to be constitutional. The issue is whether Steven Guzman (defendant), who was convicted of felonious delivery of a controlled substance, as a party to a crime, was searched in violation of the Fourth Amendment to the United States Constitution,[2] or Article I, sec. 11 of the Wisconsin Constitution.[3] At the sentencing hearing the circuit court ordered defendant to submit to a surprise drug screening urinalysis test without probable cause and without a judicial search warrant. We hold that the ordered urinalysis did not violate the United States Constitution or the Wisconsin Constitution.

The facts are not disputed. On January 27, 1989, a one count criminal complaint was filed against defendant charging him with delivering a controlled substance, *to wit* cocaine, as a party to a crime, in violation of secs. 161.41(1)(c)1 (Uniform Controlled Substances

---

[1]*State v. Guzman,* 161 Wis. 2d 80, 467 N.W.2d 564 (1991).

[2]**U.S. Const. amend. IV:**

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[3]**Wis. Const. art. I, sec. 11:**

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

Act) and 939.05(1), Stats., (Parties to a Crime). On August 14, 1989, the circuit court accepted defendant's guilty plea and adjudged him guilty.

On September 29, 1989, at the initial sentencing hearing, Judge Kennedy possessed a pre-sentence report prepared by a Department of Health and Social Services probation and parole agent based on interviews of defendant, members of defendant's family, and a police officer with post-arrest involvement with the defendant. The report revealed that defendant, age 23, started using illegal drugs, including cocaine and marijuana, at age 18 or 19. It noted that after defendant was arrested, he moved to Colorado where he worked as a security officer. According to the report, defendant stated he " 'started over,' " and "has been completely free of drugs." The report noted defendant feels "his drug use started as a recreational tool and that this criminal prosecution has cured him of any idea that he would want to use drugs again," and that "at the present time, he is using no illegal drugs." Finally, the report recommended defendant be placed on probation, fined $1,000, have his probation transferred to the State of Colorado, and be required to pay the costs of prosecution.

At the sentencing hearing, defendant's attorney confirmed that defendant wished to be placed on probation. Judge Kennedy stated there was a likelihood of probation based on the report, but that he wanted to make sure the defendant had no contact with cocaine or marijuana since his conviction. Without a search warrant, Judge Kennedy then revoked defendant's bond and ordered defendant to submit to a drug screening test, stating:

> If that test were to be positive, obviously, they would take him over to the hospital for further test-

ing; but if it's negative, then he's going to get his way. It [sic] [I] will go along with this pre-sentence report.

My primary purpose in this particular case is, if I am satisfied that drugs are out of Steve's life, that they're gone, and I think they are, then I am going to go along with the type of sentence, this type of sentence, and let him go to Colorado, et cetera.

But if he has cocaine or marijuana in his system, then my sentence will be entirely different.

The court recessed and defendant was transported to the Walworth County Huber Dorm[4] by Walworth County Sheriff's Department police officers where a urine sample was obtained. The sample tested positive for cocaine.

After recess and over objections by defense counsel, Judge Kennedy read the positive test results into the record and scheduled a continued sentencing hearing. Judge Kennedy stated that, while he "had no foundation to believe that the defendant has drugs" prior to the testing, the court nevertheless "has the power to demand any sort of reasonable test, counseling or whatever, in connection with the probation report, or the pre-sentence report."

On November 9, 1989, at the continued sentencing hearing, Judge Kennedy noted the urine sample had been re-tested at Lakeland Hospital, and the test results were again positive for cocaine. Recognizing the possibility of appeal, Judge Kennedy imposed the sentence distinguishing what he actually was imposing as opposed to what he was prepared to impose prior to the urinalysis. Judge Kennedy sentenced defendant to five years proba-

---

[4] **Section 303.09 Huber Facilities. (1)** The county board of any county may establish, relocate and maintain an unlocked facility for use exclusively by persons granted leave privileges under s. 303.08(1) and persons confined under s. 973.09(4). The facility need not be located at the county seat.

tion on the condition that he serve six months in the Walworth County Jail and not leave Wisconsin during the first two years of probation. Prior to the urinalysis, Judge Kennedy would have sentenced defendant to three years probation, no jail time, and allowed defendant to leave Wisconsin under certain conditions.

On December 5, 1989, upon trial counsel's motion for release on bond pending appeal, the defendant was released by the court and jail time was stayed pending appeal.

On July 5, 1990, Circuit Court Judge Race heard oral argument on defendant's motion for post-conviction relief seeking modification of Judge Kennedy's sentence. Judge Race denied the motion and upheld Judge Kennedy's sentence.

It is not disputed that Judge Kennedy did not issue a search warrant or have probable cause to believe that defendant had ingested a controlled substance. The issue is, whether absent a search warrant and probable cause the ordered urinalysis violated either the Fourth Amendment of the United States Constitution or Article I, sec. 11 of the Wisconsin Constitution?

Whether a search is reasonable is a constitutional question of law this court reviews independently, without deference to either the circuit court or the court of appeals. *State v. Griffin*, 131 Wis. 2d 41, 49, 388 N.W.2d 535 (1986), *aff'd*, 483 U.S. 868 (1987). We may interpret Article I, sec. 11 differently than the Supreme Court interprets the Fourth Amendment. *State v. Weide*, 155 Wis. 2d 537, 547, 455 N.W.2d 899 (1990). However, we have consistently and routinely conformed the law of search and seizure under the Wisconsin Constitution to the law developed by the United States Supreme Court under the Fourth Amendment; in part because the text

of Article I, sec. 11 of the Wisconsin Constitution and the text of the Fourth Amendment are identical, except for a few inconsequential differences in punctuation, capitalization, and the use of the plural, and in part to avoid confusion concomitant with the use of different standards. *State v. Fry,* 131 Wis. 2d 153, 172-73, 388 N.W.2d 565 (1986), *cert denied,* 479 U.S. 989 (1986); *accord Weide,* 155 Wis. 2d at 546-47.[5]

Accordingly, we do not here distinguish between the Article 1, sec. 11 issue and the Fourth Amendment issue, and recognize that the principles enunciated by the Supreme Court regarding the Fourth Amendment are followed in interpreting Article I, sec. 11 of the Wisconsin Constitution.

The collecting and testing of an individual's urine intrudes upon expectations of privacy that society has long recognized as reasonable, constitutes a search, and implicates the Fourth Amendment. *Skinner v. Railway Labor Executives' Assn.,* 489 U.S. 602, 617 (1988). To hold that the Fourth Amendment is applicable, however, is only to begin the inquiry. The analytical framework used to determine whether probable cause and a warrant are necessary before drug testing can be ordered was recently set forth in *Skinner:*

> [T]he Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable. What is reasonable, of course, "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself."

[5]*See also State v. Murdock,* 151 Wis. 2d 198, 202, 445 N.W.2d 319 (Ct. App. 1989) ("what is lawful under the Fourth Amendment to the United States Constitution, is lawful under Article I, section 11 of the Wisconsin Constitution"), *aff'd,* 155 Wis. 2d 217, 455 N.W.2d 618 (1990).

> Thus, the permissibility of a particular practice "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."
>
> In most criminal cases, we strike this balance in favor of the procedures described by the Warrant Clause of the Fourth Amendment. Except in certain well-defined circumstances, a search or seizure in such a case is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause. We have recognized exceptions to this rule, however, "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " When faced with such special needs, we have not hesitated to balance the governmental and privacy interests to assess the practicality of the warrant and probable cause requirements in the particular context.

*Skinner,* 489 U.S. at 619 (citations omitted).

Thus, the initial question is whether this case presents "special needs, beyond the normal need for law enforcement." *Id.* If it does, the question becomes whether such "special needs" justify the abrogation of the warrant and probable cause requirements. This is accomplished by balancing the governmental interests against the defendant's privacy interests. *Skinner,* 489 U.S. at 619. *See also Griffin,* 483 U.S. at 875–80.

The Supreme Court recognizes the existence of "special needs" in various contexts.[6] Defendant argues

---

[6]The "special needs" situation has been specifically recognized in *Treasury Employees v. Von Raab,* 489 U.S. 655, 666 (1989) (upholding a drug testing program involving urinalysis for certain U.S. Customs employees to deter the use of drugs); *Skinner,* 489 U.S. at 620 (upholding drug testing involving urinalysis for railway employees involved in railway accidents to ensure the

that a "special needs" situation does not exist in the present case since obtaining information relating to sen-

safety of the travelling public and the employees); *Griffin,* 483 U.S. at 873–74 (1987), *aff'g,* 131 Wis. 2d 41 (1986) (upholding probation officer's search of probationer's home); *New York v. Burger,* 482 U.S. 691, 702 (1987) (upholding administrative inspection search of premises of certain highly regulated businesses); *O'Connor v. Ortega,* 480 U.S. 709, 725 (1986) (upholding work-related searches of employees' desks and offices); *New Jersey v. T.L.O.,* 469 U.S. 325, 351 (1985) (upholding public school official's search of a student's purse) (Blackmun concurring).

The origin of "special needs" is Justice Blackmun's concurrence in *T.L.O.,* where Justice Blackmun, agreeing with the majority that public school officials may search a student's purse without a warrant or probable cause, stated: "Only in those exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impractical, is a court entitled to substitute its balancing of interests for that of the Framers." *T.L.O.,* 469 U.S. at 351.

The Court in *Skinner,* referred to *Bell v. Wolfish,* 441 U.S. 520 (1979) (upholding body cavity searches of prison inmates), as representing a "special needs" case. *Skinner,* 489 U.S. at 619–20. *Bell,* however, does not specifically refer to itself as a "special needs" case, but did employ the balancing test to determine whether a warrant and probable cause was required. *Bell,* 441 U.S. at 558–60.

Wisconsin also recognizes "special needs" principles. In *State v. Pittman,* 159 Wis. 2d 764, 465 N.W.2d 245 (Ct. App. 1990), the court of appeals held a judicially issued arrest warrant is not a constitutional prerequisite for the seizure of an alleged parole violator in his residence. The court stated: "A state's operation of its parole system like its operation of a prison presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable cause requirements." *Id.* at 771.

tencing is not an "exceptional circumstance[] . . . beyond the need for law enforcement." *T.L.O.*, 469 U.S. at 351.

We disagree and point out that we are not creating a new "special needs" category for sentencing in drug offenses. Rather, we merely hold that the present situation falls into a "special needs" category already recognized by the Supreme Court. In *Griffin*, 483 U.S. at 873–74, the United States Supreme Court held Wisconsin's operation of its probation system to be a "special needs" situation, stating:

> A State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements.

As in *Griffin*, the "special need" confronting us is the operation of Wisconsin's probation system—specifically, the sentencing court's need for information relevant to whether probation is an appropriate, safe, useful, and reasonable disposition of the criminal. In Wisconsin, it is an abuse of discretion for a sentencing court to uniformly refuse to consider a grant of probation where probation is an available sentencing alternative. *State v. Martin,* 100 Wis. 2d 326, 327, 302 N.W.2d 58 (Ct. App. 1981). A decision must therefore be made by the sentencing court as to whether probation is appropriate. The sentencing court's decision thereby becomes an indispensable and integral part of the operation of the probation system since the judge has no

choice but to consider the grant of probation where it is an available sentencing alternative.

A finding of a "special need . . . permit[s] a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Griffin*, 483 U.S. at 875. Thus, we must now determine whether such special need abrogates the warrant and probable cause requirements by balancing the governmental interests against the defendant's interest in privacy.

The governmental interest in obtaining relevant information to determine whether probation is an appropriate, safe, useful, and reasonable sentence is substantial. Both the Supreme Court and Wisconsin courts recognize this substantial interest. In *Williams v. New York*, 337 U.S. 241, 247 (1949) (footnote omitted), the Supreme Court stated: "Highly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Accord, State v. Rush*, 147 Wis. 2d 225, 230, 432 N.W.2d 688 (Ct. App. 1988). The Supreme Court reiterated this principle in *Wasman v. United States*, 468 U.S. 559, 563-64 (1984) (citation omitted):

> It is now well established that a judge or other sentencing authority is to be accorded very wide discretion in determining an appropriate sentence. The sentencing court or jury must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed . . . .. Allowing consideration of such a breadth of information ensures that the punishment will suit not merely the offense but the individual defendant.

591

Wisconsin has a strong public policy that the sentencing court be provided with all relevant information. *See Grant v. State,* 73 Wis. 2d 441, 448, 243 N.W.2d 186 (1976); *State v. McQuay,* 148 Wis. 2d 823, 827, 436 N.W.2d 905 (Ct. App. 1989), *rev'd on other grounds,* 154 Wis. 2d 116, 452 N.W.2d 337 (1990). As stated in *Elias v. State,* 93 Wis. 2d 278, 285, 286 N.W.2d 559 (1980): "The *responsibility* of the sentencing court is to acquire full knowledge of the character and behavior pattern of the convicted defendant before imposing sentence" (emphasis added).

To this end, Wisconsin allows the sentencing court to consider a broad range of factors when determining a sentence. The primary factors considered by the court are the gravity of the offense, the character of the offender, and the need for protection of the public. *Elias,* 93 Wis. 2d at 284; *State v. Jones,* 151 Wis. 2d 488, 495, 444 N.W.2d 760 (Ct. App. 1989). The court may also consider: the past record of criminal offenses; any history of undesirable behavior patterns; the defendant's personality, character and social traits; the results of a presentence investigation; the vicious or aggravated nature of the crime; the degree of defendant's culpability; the defendant's demeanor at trial; the defendant's age, educational background and employment record; the defendant's remorse, repentance and cooperativeness; the defendant's need for close rehabilitative control; the rights of the public; and the length of pretrial detention. *Jones,* 151 Wis. 2d at 495.

Probation, the sentencing alternative relevant in this case, highlights this substantial governmental interest:

The theory of probation contemplates that a person convicted of a crime who is responsive to supervision and guidance may be rehabilitated without placing him in prison. This involves a prediction by the sentencing court society will not be endangered by the convicted person not being incarcerated . . .. If the convicted criminal is thus to escape the more sever punishment of imprisonment for his wrongdoing, society and the potential victims of his anti-social tendencies must be protected.

*State v. Evans,* 77 Wis. 2d 225, 231, 252 N.W.2d 664 (1977).

This is reiterated in the Department of Correction regulations regarding parolees and probationers:

Parole and probation supervision is a mechanism of control and an attempt to guide offenders into socially appropriate ways of living . . .. Specifically, field staff are to attempt to help the client adjust to and cope with community living, reduce crime, and protect the public.

Wis. Admin. Code sec. Doc 328.04 (April 1990).

Balanced against this is the defendant's interest in privacy. The act of providing urine is one in which society recognizes a reasonable expectation of privacy. *Skinner,* 489 U.S. at 617. As stated in *Treasury Employees v. Von Raab,* 816 F.2d 170, 175 (1987) *(quoted in Skinner,* 489 U.S. at 617):

There are few activities in our society more personal or private than the passing of urine. Most people describe it by euphemisms if they talk about it at all. It is a function traditionally performed without public observation; indeed, its performance in public is generally prohibited by law as well as social custom.

593

Nevertheless, the degree of one's privacy interest may vary with his or her situation. *See Von Raab,* 489 U.S. at 671; *O'Connor,* 480 U.S. at 715; *T.L.O.,* 469 U.S. at 337. There has developed a spectrum of privacy interests within the criminal justice system. It is clear, for instance, that prisoners retain no expectation of privacy in their cells:

> [W]e hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.
>
> . . ..
>
> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.

*Hudson v. Palmer,* 468 U.S. 517, 525-28 (1984) (footnote omitted).[7]

"Whether a prisoner has *any* Fourth Amendment protection of his person after *Hudson v. Palmer,* discussed earlier, is not entirely clear." Wayne R. LaFave, Search and Seizure sec. 10.9(b) at 114 (2d ed. 1987). What is clear, however, is the controlling case in that area, *Bell,* 441 U.S. 520 (1979), upheld body cavity searches of inmates after contact with visitors to deter the presence of weapons and illicit drugs in the detention facility.[8]

---

[7]*See also T.L.O.,* 469 U.S. at 338.

[8]Relying on *Bell,* the eighth circuit upheld warrantless and random testing of prisoners to detect the use of contraband drugs,

■

It is also clear that parolees and probationers, while having greater privacy interests than prisoners, do not enjoy the same degree of privacy expectations as the ordinary citizen. In *State v. Tarrell*, 74 Wis. 2d 647, 654, 247 N.W.2d 696 (1976), this court stated: "The expectations of privacy of a person on probation cannot be the same as the expectations of privacy of persons not on probation." The Supreme Court in *Griffin* stated:

> To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy "the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special (probation) restrictions."

*Griffin*, 483 U.S. at 874 (citation omitted).

■

The specific question regarding the degree of privacy expectations possessed by a convicted defendant awaiting sentencing has not been addressed either by this court or the United States Supreme Court. To determine one's privacy expectation, courts must determine whether the expectation in a given context is one which "society is prepared to recognize as 'reasonable.' " *Hud-*

stating: "The prisoners' limited expectation of privacy does not forbid random urine collection and analysis." *Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir. 1986).

Wisconsin's Waupun Correctional Institution operates a drug screening program for inmates requiring random urinalysis tests. *Russ v. Young*, 895 F.2d 1149, 1150 (7th Cir. 1990). While *Russ* did not directly address the constitutionality of the urinalysis tests, it held that an inmate who refuses to provide a urine sample may be placed in temporary lock-up without violating his due process rights. *Id.* at 1154.

*son,* 468 U.S. at 525 (quoting *Katz v. United States,* 389 U.S. 347, 361 (1967) (Harlan, J. concurring)).[9]

Common sense dictates that a convicted defendant who has yet to be granted probation has a lesser expectation of privacy than such defendant would have had he or she been granted probation. The reasons are manifest. If society does not recognize as reasonable a probationer's expectation of privacy to be equal to that of the ordinary citizen, then surely it is not reasonable to recognize a convicted defendant, who has yet to be found appropriate for probation, to have interests equalling those of the ordinary citizen or exceeding those of one already found appropriate for probation. Society has been assured by the granting of probation that the judge believes the convicted defendant is able to live with less supervision and interference than one in prison. No such assurance exists prior to the grant of probation. It would defy sound reason to hold that a convicted defendant who has yet to be adjudged safe to society at large has an equal or greater privacy interest than one who has already been adjudged safe to intermingle with the general populace.

---

[9]The test as understood by Justice Harlan in *Katz* was twofold: "[F]irst, that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' " *Katz,* 389 U.S. at 361 (Harlan, J. concurring).

*Hudson,* however, went to lengths to explain that the first element need not be met: "The Court has always emphasized the second of these two requirements . . .. The Court's refusal to adopt a test of "subjective expectation" is understandable; constitutional rights are generally not defined by the subjective intent of those asserting the rights." *Hudson,* 468 U.S. at 525, n.7.

Therefore, we hold that, like the prisoner, parolee, and probationer, one convicted of a crime awaiting sentencing possesses a lesser privacy expectation than the general public. Moreover, we hold that, where probation is an available sentencing alternative, a convicted defendant awaiting sentencing has a lesser expectation of privacy than one already granted probation.

To ascertain whether the warrant and probable cause requirements are practical, we thus balance the substantial interest Wisconsin has in obtaining information relevant to whether probation is an appropriate, safe, useful, and reasonable sentencing alternative with the minimal or diminished privacy interests of a convicted defendant awaiting sentencing.

Defendant concedes that, had defendant been on probation or parole, a seizure and search of his urine would have been permissible if ordered by the probation or parole officer. Defendant argues that *Griffin,* 131 Wis. 2d 41 (1986), which upheld a probation officer's warrantless search of a probationer's home without probable cause, and *State v. Flakes,* 140 Wis. 2d 411, 410 N.W.2d 614 (Ct. App. 1987), which upheld a parole agent's warrantless search of a parolee's home without probable cause, do not justify the search in the present case. Defendant first points out that, unlike in *Griffin* and *Flakes,* the search of defendant was ordered by the "government" as opposed to an order from a probation or parole officer, and second, that the search did not occur when the defendant was on probation or parole.

Defendant's first distinction is without merit. We do not perceive a probation officer, who is a state employee, and whose activities include: obtaining infor-

597

mation necessary for appropriate supervision and control of the client; evaluating the client's needs and security risk; establishing written rules of supervision that are supplemental to existing court-imposed or parole commission conditions; assisting the court in investigation the facts surrounding victim's loss for restitution purposes; and recommending extension, discharge and revocation,[10] as being any less an instrument of the government than a judge.

In addition, defendant's first distinction implies that one searched pursuant to a judicial order is protected by the Fourth Amendment, while one searched pursuant to a probation officer's order is not protected. This is incorrect. One searched pursuant to a probation officer's order is protected by the Fourth Amendment since, as demonstrated in *Griffin,* the search must still meet the "reasonableness" requirement of the Fourth Amendment even though it need not meet the warrant and probable cause requirements. *See Griffin,* 483 U.S. at 872–83.

Defendant's second distinction, that a convicted defendant awaiting sentencing is not on probation and therefore should have greater Fourth Amendment protections than one already adjudged appropriate for probation is equally without merit. It rests upon the incorrect assumption that a convicted defendant awaiting sentencing has a greater privacy interest than one already on probation. For the reasons previously discussed, a convicted defendant awaiting sentence reasonably possesses a *lesser* degree of privacy interests than one already adjudged appropriate for probation.

[10]Wis. Admin. Code sec. Doc 328.04 (April 1990).

Defendant also argues that both *Griffin* and *Flakes* involved warrantless searches based on "reasonable grounds" while no such grounds were present in defendant's situation. In *Griffin,* the United States Supreme Court upheld this court's determination that a probation officer's search of a probationer's home without a search warrant and without probable cause, based instead on "reasonable grounds," was constitutional. *Griffin,* 483 U.S. at 880. Wisconsin places probationers in "the legal custody of the State Department of Health and Social Services and renders [the probationers] 'subject . . . to . . . conditions set by the court and rules and regulations established by the department.' " *Id.* at 870. A Department regulation "permits any probation officer to search a probationer's home without a warrant as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband." *Id.* at 870–71.

In *Griffin,* a probation officer received a tip from a police officer that the probationer's home contained a gun or guns. Based on the tip, a probation officer searched the probationer's home and discovered a gun. The United States Supreme Court noted that it was bound by this court's interpretation that the probation officer's search of probationer's home was based upon "reasonable grounds" pursuant to the regulation. The Supreme Court was careful, however, to point out that it held the search to be constitutional since it was made pursuant to a regulation which itself satisfied the "reasonableness" requirement of the Fourth Amendment. *Griffin,* 483 U.S. at 872–73. The Court did not hold that a finding of "reasonable grounds" was necessary before a finding of "reasonableness" could be found. It merely held that a search made pursuant to a regulation includ-

ing a "reasonable grounds" standard was constitutional. Thus, while a warrantless search based on a regulation mandating "reasonable grounds" meets the "reasonableness" requirement of the Fourth Amendment, not all warrantless searches must be based on "reasonable grounds" to meet the Fourth Amendment "reasonableness" requirement.

That "reasonable grounds" are not necessary to satisfy the "reasonableness" requirement of the Fourth Amendment is apparent. We observe that drug tests involving urinalysis absent a warrant, probable cause, or even individualized suspicion, have been upheld in "special needs" cases where the Supreme Court has found substantial government interests and diminished individual privacy interests. *Skinner* involved Federal Railroad Administration regulations mandating blood and urine tests of employees involved in certain train accidents. The Court held:

> In light of the limited discretion exercised by the railroad employers under the regulations, the surpassing safety interests served by toxicological tests in this context, and the diminished expectation of privacy that attaches to information pertaining to the fitness of covered employees, we believe that it is reasonable to conduct such tests in the absence of a warrant or reasonable suspicion that any particular employee may be impaired.

*Skinner,* 489 U.S. at 634.

In *Von Raab,* the Commissioner of the U.S. Customs Service instituted a drug screening program requiring urinalysis for employees seeking transfer or promotion to certain positions. The Supreme Court upheld the warrantless and suspicionless drug testing program:

600

> [O]ur decision in *[Skinner]* reaffirms the longstanding principle that neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance.

*Von Raab,* 489 U.S. at 665.

If a railroad employee, as in *Skinner,* and a U.S. Customs employee, as in *Von Raab,* may be subjected to urinalysis without a warrant, probable cause, or even individualized suspicion, then surely one convicted of a drug related offense facing possible probation should be subject to such a search also.

The method to determine whether any degree of individualized suspicion is required was stated in *Skinner:*

> In limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion.

*Skinner,* 489 U.S. at 624.

The purpose of probation is to rehabilitate those convicted of a crime and to protect the public from further criminal conduct. *Wagner v. State,* 89 Wis. 2d 70, 77, 277 N.W.2d 849 (1979); *Tarrell,* 74 Wis. 2d at 653. Whether the convicted defendant continues to use drugs is of paramount importance in his or her rehabilitation. A judge must necessarily have such information to ascertain the rehabilitative needs of one convicted of a drug-related offense.

The judge cannot reasonably rely upon the representations of such a defendant because he or she has the

incentive to deny continuing drug use in hopes of receiving a more lenient sentence. The individual who is to benefit from the rehabilitation has an incentive to hide the very facts of his or her life which reveal his or her rehabilitative needs. No convicted defendant in need of rehabilitation should be placed in the quandary of deciding whether to lie about their continued drug use in hopes of a more lenient sentence or to be forthright and receive a possibly harsher sentence which nevertheless is tailored to their rehabilitative needs. A judge's authority to order urinalysis thus increases the judges ability to gather information about the convicted defendant's rehabilitative needs, reduces the convicted defendant's incentive to misinform the court about his or her continued drug use, and forces the convicted defendant to confront his or her drug problem responsibly.

We note that the judge may also look to the pre-sentence report in addition to the representations of the convicted defendant. Such report, as demonstrated by the present case, is sometimes unreliable as well. The probation officer who wrote the pre-sentence report interviewed the defendant, both of defendant's parents, defendant's brother, defendant's sister, and the officer involved with the defendant after his arrest. Despite these diligent and thorough efforts, the probation officer did not uncover the fact of defendant's continued illegal drug use.

This same reasoning applies to the court's responsibility to protect society's safety interests as the sentencing court must predict whether the convict will endanger the public. *Evans,* 77 Wis. 2d at 231. The sentencing court must be able to determine whether a convicted defendant is appropriate for probation or whether probation poses a threat to the safety of society. Certainly, one convicted of a drug related crime remains a substantial

threat to society where such individual continues his or her criminal conduct.

As demonstrated by the present case, the existing tools are sometimes inadequate for a sentencing court to obtain critical information about a convicted defendant. Thus, the convicted defendant's rehabilitation and society's protection are jeopardized. Without the ability to substantiate a convicted defendant's representations that he or she is no longer involved with illegal drugs, the sentencing judge is relegated to the position of guessing, of having to rely on demonstrably incomplete, inaccurate, and dubious information. The Fourth Amendment does not require judges to guess. That would serve neither the convicted defendant in need of rehabilitation, nor a society in need of protection.

Since probable cause or individualized suspicion is unnecessary, it follows that a warrant is unnecessary also. The Court in *Griffin* explains why. In responding to Justice Blackmun's dissent, which argued that even though probable cause is unnecessary a warrant should still be required, *Griffin,* 483 U.S. at 882, the majority pointed out that, except in certain administrative contexts, requiring a warrant when probable cause was not required "runs up against the constitutional provision that 'no Warrants shall issue, but upon probable cause.' " *Griffin,* 483 U.S. at 877–878, and nn.4–5. We agree. The very legitimacy of a warrant is based on the fact that such warrant was issued upon a finding of probable cause. Without the finding of probable cause, the legitimacy of the governmental power to search ordinarily disappears.

Even though not required, we note that the purposes of the warrant requirement were fully served in this case:

603

> An essential purpose of a warrant requirement is to protect privacy interests by assuring citizens subject to a search or seizure that such intrusions are not the random or arbitrary acts of government agents. A warrant assures the citizen that the intrusion is authorized by law, and that it is narrowly limited in its objective and scope. A warrant also provides the detached scrutiny of a neutral magistrate, and thus ensures an objective determination whether an intrusion is justified in any given case.

*Skinner,* 489 U.S. 621–22 (citations omitted).

The court's order was not random nor arbitrary. The order was specifically related to the nature of the crime and the consideration of probation as a sentencing alternative. The objective was to obtain information regarding the specific issue of whether defendant was using controlled substances to determine the appropriateness of probation. The scope of the search was thus narrowly limited to the presence of a controlled substance in defendant's system. Lastly, the judge is the neutral magistrate who by his very position is able to make an objective determination as to whether the intrusion is justified.

Balancing the government's substantial interest in obtaining information relevant to whether probation is an appropriate, safe, useful, and reasonable disposition of the convicted defendant against the minimal privacy interests of a convicted defendant awaiting sentence, we hold that a warrant, probable cause, or individualized suspicion are not practical, and therefore the search did not violate the Fourth Amendment or Article I, sec. 11.

We hold that when a convicted defendant is awaiting sentencing for a drug related offense and probation is

a sentencing alternative, a judge may in his or her discretion order such defendant to submit to urinalysis or other appropriate tests to determine the presence of illegal drugs in his or her system. If the test(s) yield a positive result for the presence of illegal drugs, the judge is then to use his or her discretion in deciding whether probation is appropriate. This decision does not mandate urinalysis or other tests for convicted defendants awaiting sentencing or mandate that positive test results yield a denial of probation. Both of these decisions are left to the sound discretion of the sentencing court.

*By the Court.*—The decision of the court of appeals is affirmed, and the cause remanded to the circuit court for further proceedings not inconsistent with this opinion.

HEFFERNAN, CHIEF JUSTICE *(dissenting).* Both the trial court and the majority seek to reach a desirable result—to determine whether a person convicted of a crime is an appropriate candidate for probation. Unfortunately, they attempt to reach this result in the least acceptable fashion—by discarding the mandated protections of the Fourth Amendment in favor of allowing sentencing judges blanket authority to order searches of convicted persons. The majority concludes that the need for all relevant sentencing information justifies warrantless searches predicated upon no suspicion at all. Because I conclude that the need for all relevant sentencing information does not nullify the protections of the Fourth Amendment, I dissent.

The majority opinion relies upon three faulty assumptions to reach its conclusion: that a judge's sentencing decision is a part of the Wisconsin probation system, that the need for relevant sentencing information is a "special need" beyond the need for normal law

605

enforcement, and that persons convicted and awaiting sentencing have a lesser expectation of privacy than persons on probation.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

Implicit in this language is the understanding that probable cause is ordinarily required to justify reasonableness. However, the United States Supreme Court has recognized numerous exceptions to the warrant requirement in situations where a search is reasonable in the absence of probable cause. One of these exceptions is where "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring). Where such special needs exist, the reasonableness of the search will be determined not by the warrant and probable cause requirements, but by balancing the governmental interests against the defendant's privacy interests. *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 619 (1989).[1]

As the majority indicates, the United States Supreme Court has recognized the existence of "special

---

[1] In effect, a finding of "special needs" reduces the Fourth Amendment to its first operative phrase: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . .."

needs" in several different contexts. Majority op. at 588–589 n.6. None of these cases, however, supports the extension of this doctrine to an ordinary sentencing decision by a trial judge. The majority states that it is not creating a new "special needs" category for sentencing in drug cases, but goes on to create a new "special needs" category for a sentencing judge in every case where probation is a sentencing option. Because probation is an option in nearly every criminal prosecution except where the crime is punishable by life imprisonment, sec. 973.09(1), Stats., this new "special needs" category reaches far beyond sentencing in drug cases. The majority gives no logical explanation for this bold expansion of judicial power at the expense of the Fourth Amendment.

The majority asserts that "the present situation falls into a 'special needs' category already recognized by the [United States] Supreme Court." Majority op. at 590. The majority contends that in *Griffin v. Wisconsin,* 483 U.S. 868 (1987), the United States Supreme Court "held Wisconsin's operation of its probation system to be a 'special needs' situation." Majority op. at 590. This is simply not true. In *Griffin,* the United States Supreme Court did not state that Wisconsin's probation system *is* a special needs situation; rather, the Court held that the Wisconsin probation system *presents* certain "special needs," one of which was the need for supervision. Specifically, the Court stated:

> Recent research suggests that more intensive supervision can reduce recidivism, and the importance of supervision has grown as probation has become an increasingly common sentence for those convicted of serious crimes. Supervision, then, is a "special need" of the State permitting a degree of impingement

> upon privacy that would not be constitutional if
> applied to the public at large.

*Griffin,* 483 U.S. at 875 (citations omitted). This limited holding does not translate into a holding that the entire Wisconsin probation system is a "special need."

Additionally, the sentencing decision is not a part of the probation system. The majority asserts that a sentencing court's decision regarding whether probation is appropriate is "an indispensable and integral part of the operation of the probation system . . .." Majority op. at 590–591. This conclusion is not supportable. True, the probation system cannot operate until a judge sentences an individual to probation, but this no more makes the judge's decision a part of that system than a prison sentence makes a judge's decision an integral part of the Wisconsin prison system. Sentencing, probation and imprisonment are each separate components of the criminal process, and should be treated as such. *Griffin* does not control this case.

Outside of the holding of *Griffin,* the question is whether a sentencing judge's need for information relevant to whether probation is appropriate presents "special needs, beyond the normal need for law enforcement [which make] the warrant and probable-cause requirement impracticable." *T.L.O.,* 469 U.S. at 351 (Blackmun, J., concurring). It does not. A judge's need for information relevant to sentencing is part of the "normal" operation of the criminal justice system. The warrant and probable cause requirements are no more "impracticable" at this point in the proceedings than they are at or before trial. At trial, the court does not have a "special need" for information relevant to a determination of the defendant's guilt or innocence. In both instances, a primary concern is the protection of the public. Therefore, the need for relevant information to determine "whether

probation is an appropriate, safe, useful, and reasonable disposition" of a convicted defendant is not a "special need," and the warrantless search of Guzman violated the Fourth Amendment.[2]

The majority, after creating a broad new "special needs" category for nearly all sentencing decisions, goes on to consider whether the government's interests served by the warrantless search outweigh the convicted defendant's privacy interests. It is undeniable that Wisconsin has a substantial interest in obtaining information relevant to sentencing. However, this interest alone does not nullify constitutional protections. In the context of this case, it must be measured against the privacy interests of a convicted defendant to determine whether the warrant and probable cause requirements are "impracticable" and a warrantless, suspicionless search "reasonable."

The majority correctly states that neither prisoners nor probationers enjoy the same degree of privacy expectations as ordinary citizens. *Hudson v. Palmer,* 468 U.S. 517, 528 (1984); *State v. Tarrell,* 74 Wis. 2d 647, 654, 247 N.W.2d 696 (1976). At this point in the analysis, however, the majority makes an unsubstantiated leap of logic, stating:

> Common sense dictates that a convicted defendant who has yet to be granted probation has a lesser expectation of privacy than such defendant would have had he or she been granted probation. The reasons are manifest. If society does not recognize as reasonable a probationer's expectation of privacy to be equal to that of the ordinary citizen, then surely it is not reasonable to recognize a convicted defendant, who has yet to be found appropriate for probation, to have interests equalling those of the ordinary citizen

---

[2]The state offered no other justification for the search than "special need."

or exceeding those of one already found appropriate for probation. Society has been assured by the granting of probation that the judge believes the convicted defendant is able to live with less supervision and interference than one in prison. No such assurance exists prior to the grant of probation. It would defy sound reason to hold that a convicted defendant who has yet to be adjudged safe to society at large has an equal or greater privacy interest than one who has already been adjudged safe to intermingle with the general populace.

Majority op. at 596. The superficial logic of this conclusion disappears when the reasons underlying a prisoner's or a probationer's limited expectation of privacy are examined. Both derive from pervasive state supervision, not from any general need to protect the public. *See Hudson,* 468 U.S. at 528; *Griffin,* 483 U.S. at 874; and Wis. Admin. Code sec. Doc chs. 302–350 (April 1990).

Individuals convicted of a crime and awaiting sentencing are not subject to similar regulations and supervision. Rather, as evidenced in this case, the convicted offender may simply be released on bond and ordered to appear for sentencing. The "Certificate of Order to Appear for Sentencing and for Pre-Sentence Investigation" filed in this case stated:

The defendant shall appear personally in the Court on September 29, 1989 at 1:00 o'clock P.M., which time the Court now sets for sentencing; and

The State Department of Health and Social Services shall make a pre-sentence examination and investigation of the defendant and report its findings to this Court at least 48 hours prior to that date; and

Pending sentence the defendant is hereby released on signature bond.

Pursuant to secs. 969.01(2) and (4), Stats., the sentencing judge has the discretion to allow release on bail after conviction, and may impose reasonable conditions to protect the community.[3] In this case, the trial judge apparently concluded that no conditions were necessary to protect the public. During the interim between the trial court's acceptance of Guzman's guilty plea and the initial sentencing date, the record indicates that Guzman moved to Colorado and worked as a security guard. In the absence of any restrictions upon his personal freedom, it is without rational foundation to assert that convicted defendants awaiting sentencing, as a class, have lesser expectations of privacy than probationers

---

[3]Section 969.01(2)(a), Stats., provides:

> Release pursuant to s. 969.02 or 969.03 may be allowed in the discretion of the trial court after conviction and prior to sentencing or the granting of probation.

Section 969.01(4), Stats., provides:

> If bail is imposed, it shall be only in the amount found necessary to assure the appearance of the defendant. Conditions of release, other than monetary conditions, may be imposed for the purpose of protecting members of the community from serious bodily harm or preventing intimidation of witnesses. Proper considerations in determining whether to release the defendant without bail, fixing a reasonable amount of bail or imposing other reasonable conditions of release are: the ability of the arrested person to give bail, the nature, number and gravity of the offenses and the potential penalty the defendant faces, whether the alleged acts were violent in nature, the defendant's prior criminal record, if any, the character, health, residence and reputation of the defendant, the character and strength of the evidence which has been presented to the judge, whether the defendant is currently on probation or parole, whether the defendant is already on bail or subject to other release conditions in other pending cases, whether the defendant has been bound over for trial after a preliminary examination, whether the defendant has in the past forfeited bail or violated a condition of release or was a fugitive from justice at the time of arrest, and the policy against unnecessary detention of the defendant's pending trial.

who, for articulated reasons, specifically have been made subject to pervasive regulations.

The majority's conclusion seems to rest on a determination that until a sentence of probation is imposed, the convicted defendant should be viewed for Fourth Amendment purposes as the equivalent of a prisoner. This ignores the fact that Guzman could have received the minimum sanction of a $1,000 fine. The penalty prescribed for delivery of cocaine as party to a crime, in the amount involved here, was a fine of "not less than $1,000 nor more than $200,000" and imprisonment "for not more than 5 years." Section 161.41(1)(c)1, Stats. 1987–88. There was no minimum term of imprisonment. Guzman could have received a sanction less than probation. This is not to say that the potential spectrum of sentences determines a convicted defendant's privacy interests, but only that it is erroneous to conclude that convicted persons necessarily have a lesser expectation of privacy than a convicted defendant placed on probation.

The final flaw in the majority's analysis is its conclusion that the convicted defendant's diminished privacy expectation bows to the state's interest in obtaining relevant information such that a chemical search for drugs upon no cause or suspicion of drug use is allowed. The majority acknowledges that "[t]here are few activities in our society more personal or private than the passing of urine." Majority op. at 593, citing *Treasury Employees v. Von Raab,* 816 F.2d 170, 175 (5th Cir. 1987), *aff'd in part, vacated in part,* 489 U.S. 656 (1989). Yet the majority concludes that the government's interest in knowing the chemical makeup of a convicted defendant's body is so great as to outweigh this interest:

> Whether the convicted defendant continues to use drugs is of paramount importance in his or her reha-

> bilitation. A judge must necessarily have such infor-
> mation to ascertain the rehabilitative needs of one
> convicted of a drug-related offense.

Majority op. at 601. This bold new rule is disturbing. Essentially, the majority holds that once convicted, an individual's constitutional rights disappear in the face of the trial court's need for sentencing information. Nothing in the majority opinion will prevent future courts from ordering all manner of searches of a defendant's person, home, car or effects if any information relevant to sentencing is arguably ascertainable. This is not reasonable.

As I stated earlier, it is desirable that the trial court obtain all relevant information before passing sentence on a convicted defendant, but it is also desirable, indeed mandatory, that the trial court obtain this information in accordance with the constitution. It is no less desirable that the court before passing a judgment of guilty on an accused defendant obtain all relevant information, but never has it been said that this need nullifies the protections of the constitution. Nor should it ever be said. I dissent.

I am authorized to state that Justice Shirley S. Abrahamson joins this dissenting opinion.