**Jaime PORTILLO, Petitioner,**

v.

**UNITED STATES DISTRICT COURT FOR the DISTRICT OF ARIZONA, Respondent,**

**United States of America, Real Party in Interest.**

**No. 93–70879.**

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 18, 1993.

Decided Jan. 19, 1994.

820

Deborah M. Fine and John R. Hannah, Assistant Federal Public Defenders, Phoenix, AZ, for Petitioner.

Charles F. Hyder and Roslyn Moore–Silver, Assistant United States Attorneys, Phoenix, AZ, for Respondent and Real Party in Interest.

Before: SCHROEDER, D.W. NELSON and THOMPSON, Circuit Judges.

PER CURIAM.

### BACKGROUND

On October 21, 1993, petitioner Jaime Portillo pled guilty to stealing a vacuum cleaner, a baby stroller, a child's car seat and a cellular telephone from a military base in violation of 18 U.S.C. § 661. The matter was scheduled for sentencing on January 3, 1994.[1] At that time the district court directed the probation officer to prepare a presentence report and ordered Portillo to assist the probation officer in the preparation of the presentence report.[2]

On November 2, 1993, Portillo moved in the district court to set aside General Order 221 and to stay the district court's order.[3] On November 3, 1993, the district court denied the motion and ordered Portillo to submit to urine testing, stating that General Order 221 was not the basis for the order and that any adverse results obtained from the testing would not be used against Portillo. Portillo then filed with this court an emergency motion for stay and the present petition for writ of mandamus. On November 3, 1993, we stayed the district court's order pending resolution of the petition for a writ of mandamus.

---

1. Sentencing has been continued until January 21, 1994. Portillo is free on his own recognizance pending sentencing.

2. The district court did not enter an order directing Portillo to submit to urine testing at the plea hearing. However, the court did warn defense counsel not to advise Portillo to refuse compliance with any lawful court order. Plea Hearing at 21. It appears the court was referring to General Order 221.

3. United States District Court for the District of Arizona General Order 221 states:

   IT IS HEREBY ORDERED that as directed by the Probation Officer, all defendants shall be required to submit to urine testing to determine substance abuse for presentence investigation purposes. (July 29, 1993)

## ANALYSIS

■ In determining whether to grant mandamus relief, we consider the factors set forth in *Bauman v. United States District Court,* 557 F.2d 650, 654–55 (9th Cir.1977). These factors are:

(1) the party seeking the writ has no other adequate means, such as direct appeal, to obtain the relief he or she desires; (2) the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) the district court's order is clearly erroneous as a matter of law; (4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) the district court's order raises new and important problems or issues of law of first impression.

*Bauman,* 557 F.2d at 654–55. These guidelines are cumulative and a proper disposition requires a balancing of competing factors. *Id.* at 655.

Portillo has established the presence of three of the five *Bauman* factors. The issue of presentence urine testing is one of first impression, not only in this circuit, but in federal courts across the country. Portillo has also demonstrated that routine presentence urine testing will constitute an oft-repeated error in the District of Arizona. While General Order 221 is not directly at issue in this case, this case presents precisely the same *Fourth Amendment* issue as a case arising under the General Order. Here, as in General Order 221, the district court has ordered a urine test, for presentence investigation purposes, without reference to the particular facts of this case.

■ Finally, in determining whether the third *Bauman* factor has been satisfied, we must consider whether we are "firmly convinced that [the] district court has erred in" requiring Portillo to submit to a presentence urine test. *See Seattle Times v. United States Dist. Court,* 845 F.2d 1513, 1515 (9th Cir.1988) (quoting *In re Cement Antitrust Litigation,* 688 F.2d 1297, 1306–07 (9th Cir. 1982), *aff'd mem. sub. nom., Arizona v. United States Dist. Court,* 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983)). To answer this question, we must undertake a Fourth Amendment analysis.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" absent a warrant issued upon probable cause. The Supreme Court has stated that "[b]ecause the collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable ... these intrusions must be deemed searches under the Fourth Amendment." *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 617, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639 (1989). Nevertheless, the Supreme Court has recognized limited exceptions to the probable cause requirement "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable cause requirement impracticable.'" *Id.* (quoting *New Jersey v. T.L.O.,* 469 U.S. 325, 351, 105 S.Ct. 733, 747, 83 L.Ed.2d 720 (1985)).

The Supreme Court has held that the operation of a probation system presents "special needs, beyond the normal need for law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Griffin v. Wisconsin,* 483 U.S. 868, 876–78, 107 S.Ct. 3164, 3170–71, 97 L.Ed.2d 709 (1987) (upholding a probation officer's search of a probationers's home without a warrant). In determining whether probation or other sentencing alternatives are appropriate, sentencing courts have been accorded wide discretion in the type of information they may consider. *See* 18 U.S.C. §§ 3553, 3661.[4] Moreover, the Supreme

---

4. Title 18 U.S.C. § 3553 states in part:
   The court, in determining the particular sentence to be imposed, shall consider—
   (1) the nature and circumstances of the offense, and the history and characteristics of the defendant;
   (2) the need for the sentenced imposed—
   . . . .

Title 18 U.S.C. § 3661 provides:
   No limitation shall be placed on the information concerning the background, characteristics, and conduct of the person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

Court has emphasized the importance of imposing the appropriate sentence for each defendant. *Wasman v. United States,* 468 U.S. 559, 563–64, 104 S.Ct. 3217, 3220, 82 L.Ed.2d 424 (1984) ("The sentencing court or jury must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed...").

■ Thus, where probation is an available sentencing alternative, the sentencing court's need for information relevant to whether probation is an appropriate, safe, useful, and reasonable disposition of a defendant's sentence, is an integral part of the operation of the probation system. *See Wisconsin v. Guzman,* 166 Wis.2d 577, 480 N.W.2d 446, *cert. denied,* ——— U.S. ———, 112 S.Ct. 2952, 119 L.Ed.2d 575 (1992). Here, the district court ordered Portillo to submit to urinalysis for presentence investigation purposes to determine the appropriate sentencing disposition. Accordingly, the "special needs" exception to the Fourth Amendment applies. *See Skinner,* 489 U.S. at 624, 109 S.Ct. at 1417.

■ To determine if the "special needs" exception justifies the complete abrogation of the probable cause requirement or merely the application of a lesser standard of reasonableness, the court must undertake "a careful balancing of governmental and private interests." *Id.* When the balance of interests precludes insistence on a showing of probable cause, the courts have usually required "some quantum of individualized suspicion" before concluding that a search is reasonable. *United States v. Martinez–Fuerte,* 428 U.S. 543, 560, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976). "In limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion." *Skinner,* 489 U.S. at 624, 109 S.Ct. at 1417.

■ Here, the government clearly has a significant interest in determining the appropriate sentencing alternative for a defendant. *See Wasman,* 468 U.S. at 563–64, 104 S.Ct. at 3220. Balanced against the government's interest is the defendant's privacy interest. To determine an individual's privacy expectation, we apply a two-part test: 1) the defendant's subjective expectation of privacy; and 2) the reasonableness of that expectation. *See Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967).

■ The act of providing urine is one which society recognizes implicates a reasonable expectation of privacy. *See Skinner,* 489 U.S. at 617, 109 S.Ct. at 1413. Nevertheless, the degree of one's privacy interest varies with his or her situation. *See United Treasury Employees v. Von Raab,* 489 U.S. 656, 671, 109 S.Ct. 1384, 1393, 103 L.Ed.2d 685 (1989). For example, it is well established that society does not recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell. *Hudson v. Palmer,* 468 U.S. 517, 525–28, 104 S.Ct. 3194, 3199–3201, 82 L.Ed.2d 393 (1984). Further, prisoners have a diminished expectation of being free from body cavity searches after contact with visitors. *See Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

■ While parolees and probationers have greater privacy interests than prisoners, they do not enjoy the same degree of privacy expectations as the ordinary citizen. *See Griffin,* 483 U.S. at 876–78, 107 S.Ct. at 3170–71 (supervision of probationers is a "'special need' of the [s]tate permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large"). In some cases, probation officers may search probationers without obtaining a warrant and under circumstances when there is less than probable cause. *Id.* "However, the search must be reasonable and must be based upon the probation officer's reasonable belief that it is necessary to the performance of her duties." *United States v. Duff,* 831 F.2d 176, 179 (9th Cir. 1987) (citing *Latta v. Fitzharris,* 521 F.2d 246, 250–52 (9th Cir.), *cert. denied,* 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975)).

■ Here, Portillo has been convicted of theft and is awaiting sentencing. He has been and remains free on his own recogni-

zance pending sentencing, subject to the supervision of the court and the imposition of general conditions of release. Thus, the supervisory nature of Portillo's release, like that of a probationer, presents a "special need, beyond the normal need for law enforcement." *See Griffin,* 483 U.S. at 875–76, 107 S.Ct. at 3170. Nevertheless, Portillo, like a probationer, has an expectation of privacy which requires the government to exercise some degree of reasonableness in performing its searches unless doing so would jeopardize the interest it seeks to advance. *See id.; see also Martinez–Fuerte,* 428 U.S. at 560, 96 S.Ct. at 3084.

■ Here, the record does not indicate that the district court had any evidence that Portillo's crime of theft bore any correlation to drug usage.[5] *Cf. Guzman,* 480 N.W.2d at 455–56 (order for presentence urine testing of convicted defendant awaiting sentencing for drug related offense upheld). Prior to the court's order directing Portillo to submit to urine testing, the court had no information regarding Portillo's background, criminal history or potential prior drug use. Moreover, because the test was to be administered as a routine test, Portillo had advance notice of it, and no exigency existed which would jeopardize the government's interest. *See Skinner,* 489 U.S. at 624, 109 S.Ct. at 1417. Therefore, the district court erred by requiring Portillo to submit to presentence urine testing.

■ Mandamus is the proper remedy to correct the district court's error. *See Bauman,* 557 F.2d at 654–55. Portillo's situation presents exceptional circumstances that warrant the extraordinary remedy of mandamus. *See id.* Accordingly, Portillo's petition for writ of mandamus is GRANTED.

The district court's order of November 3, 1993 is vacated in its entirety.

SCHROEDER, Circuit Judge, concurring separately:

I concur in the result. In my view, a district court's sentencing decision should not be based in any way upon results of drug testing, unless the court has probable cause to believe the defendant is using illegal drugs. Here, the law enforcement authorities lacked even an individualized suspicion that the subject had ever engaged in illegal drug activities. *Contrast State v. Guzman,* 480 N.W.2d 446 (Wis.1992) (approving presentencing urinalysis of a defendant convicted of illegal drug dealing over a strong dissent).

I cannot agree with the majority's view that sentencing is an integral part of the probation system and that sentencing concerns may fall within the "special needs" exception to the probable cause requirement of the Fourth Amendment whenever a probation is a sentencing possibility. *Contrast United States v. Duff,* 831 F.2d 176 (9th Cir.1987) (upholding drug testing of a probationer convicted of a drug offense upon reasonable suspicion that he had been violating the terms of his probation). I also must disagree with the majority's conclusion that the "special need" requirement may be satisfied by the government somehow correlating the defendant's crime of conviction, itself unrelated to drugs, with drug usage. These are not issues that need to be decided in this case. The majority reaches out to extend a most unfortunate invitation to the government to try to justify invasive drug testing procedures on a particular defendant by using statistics of behavior engaged in by others. This suggestion is unprecedented and incapable of fair and reasonable application as required by due process and the Fourth Amendment.

■

5. In opposition to Portillo's petition for a writ of mandamus, the government has provided us with statistical data purporting to relate crime in general to drug usage. Without passing judgment on the relevance of this data, we note it was not presented to the district court and we do not consider it.