STATE of Wisconsin, Plaintiff-Respondent,

v.

Steven L. GUZMAN, Defendant-Appellant.†

Court of Appeals

*No. 90-1652-CR. Submitted on briefs January 31, 1991.—Decided February 27, 1991.*

(Also reported in 467 N.W.2d 564.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Larry D. Steen,* of *Godfrey Neshek & Worth, S.C.* of Elkhorn.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general and *David J. Becker,* assistant attorney general.

Before Nettesheim, P.J., Scott and Anderson, JJ.

NETTESHEIM, P.J. The issue on this appeal is whether the trial court subjected Steven L. Guzman to an unconstitutional search when the court ordered Guzman to undergo a surprise drug test just prior to Guzman's scheduled sentencing. We hold that the search was reasonable under the state and federal constitutions. We therefore affirm Guzman's conviction and the order denying his application for postconviction relief.

The relevant facts are straightforward and not in dispute. On January 23, 1989, the state charged Guzman as a party to the crime of unlawfully delivering a controlled substance, pursuant to secs. 161.41(1)(c)1 and 939.05(1), Stats. Guzman waived a preliminary hearing and pled not guilty. On August 14, 1989, Guzman appeared before the trial court, the Honorable Robert J. Kennedy, and changed his plea to guilty. The state agreed to remain silent on the matter of Guzman's sentence. The court directed the Department of Health and Social Services to prepare a presentence report.

As a result of a presentence interview with Guzman, the department agent stated in the presentence report "that he [Guzman] had moved to Denver, Colorado and 'started over,' describing that he's working as a security officer, living on his own, and that he has been completely free of drugs." The agent also reported that Guzman "feels that his drug use started as a recreational tool and that this criminal prosecution has cured him of any idea that he would want to use drugs again." In addition, the agent reported that Guzman stated that "at the present time, he [Guzman] is using no illegal drugs." The

85

agent recommended that Guzman be placed on straight probation, fined $1000 and pay the costs of the prosecution. The agent also recommended that Guzman's probation be transferred to Colorado—pursuant to Guzman's wish.

At the beginning of the sentencing hearing, Guzman's attorney confirmed in response to a question from the trial court that Guzman wished to be placed on probation. The court indicated that it would likely follow the presentence recommendation. The court, however, added the following qualification which lies at the heart of this appeal:

> I have police officers here, I want to make sure that he has not had any contact with any cocaine or marijuana. I want him to go out for a screening test right now, to the Huber dorm, and the officers can take him out there right now. They will bring him right back after it's completed.
>
> If that test were to be positive, obviously, they would take him over to the hospital for further testing; but if it's negative, then he's going to get his way. It will go along this presentence report.
>
> My primary purpose in this particular case is, if I am satisfied that drugs are out of Steve's life, that they're gone, and I think they are, then I am going to go along with the type of sentence, this type of sentence, and let him go to Colorado, et cetera.
>
> But if he has cocaine or marijuana in his system, then my sentence will be entirely different. I am revoking his bond temporarily for that purpose, and ordering the officers to take him over there for that screening test.

The trial court then recessed the sentencing proceeding to allow the authorities to conduct the screening urinalysis test. After the test was conducted, the court reconvened. Guzman's attorney then registered an objec-

tion to the court's order, arguing, *inter alia,* that the order was an abuse of discretion and not supported by any probable cause or other foundation.

The trial court overruled Guzman's objections and announced that the test results showed the presence of cocaine. The court then continued the sentencing to a future date to allow the presentence report to be updated in light of the testing result and to allow for further testing.[1] The updated presentence report again recommended a probationary term. However, in addition to the previous conditions of probation, the updated report also recommended a condition of confinement in the county jail, an assessment for alcohol and/or drug abuse and compliance with any recommended treatment program.

At the continued sentencing hearing, the trial court recited not only the actual sentence but also contrasted it with the sentence which Guzman would have received had the drug test not proved positive: five years' probation instead of three years; six months' county jail confinement as a probation condition instead of no confinement; and a denial of Guzman's request for a transfer of his probation to Colorado instead of an approval of the transfer.[2]

By postconviction motion, Guzman renewed his objections to the trial court's drug testing procedure and order. The court denied the motion.[3] Guzman appeals.

---

[1]The record does not reveal whether any further testing of the test sample ever occurred. Guzman never raised any issue in the trial court concerning the accuracy of the test.

[2]The trial court imposed other conditions of probation which would have been imposed regardless of the drug test results.

[3]The Honorable John R. Race presided at the postconviction proceeding and denied Guzman's postconviction motion.

The state concedes that Guzman has standing to raise the issue, that governmental action is present, and that the fourth amendment is implicated by the facts of this case. In addition, we observe that the taking and collection of a urine sample is an intrusion which constitutes a search for fourth amendment purposes. *Skinner v. Railway Labor Exec. Ass'n,* 489 U.S. 602, 617 (1989). *See also National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 665 (1989).[4]

This only begins the inquiry, however, for the fourth amendment does not proscribe all searches and seizures, but only those that are unreasonable. *Skinner,* 489 U.S. at 619. What is reasonable depends on all the circumstances surrounding the search or seizure and the nature of the search or seizure itself. *Id.* Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's fourth amendment interests against its promotion of legitimate governmental interests. *Id.*

The issue before us presents a question of constitutional law; although we value the decision of the trial court on such a question, we review the matter independently without deference to the decision of the trial court. *See State v. Griffin,* 131 Wis. 2d 41, 49, 388

[4]Because our supreme court "has consistently and routinely conformed the law of search and seizure under the state constitution to that developed by the United States Supreme Court under the fourth amendment" (*State v. Fry,* 131 Wis. 2d 153, 172, 388 N.W.2d 565, 573, *cert. denied,* 479 U.S. 989 (1986)), we address the appellate issue in "fourth amendment" terms intending that our language also governs Guzman's arguments under the Wisconsin Constitution.

N.W.2d 535, 537 (1986), *aff'd, Griffin v. Wisconsin,* 483 U.S. 868 (1987).

Except in certain well-defined circumstances, a search or seizure is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause. *Skinner,* 489 U.S. at 619. A judicial warrant, however, is not required "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " *Id.* (quoting *Griffin,* 483 U.S. at 873). When a claim of "special need" is made, the court must balance the governmental and privacy interests to assess the practicality of the warrant and probable cause requirements in the particular context. *Skinner,* 489 U.S. at 619.

## "SPECIAL NEEDS"

Those "special needs" situations thus far recognized by the United States Supreme Court which permit searches without an attendant requirement of probable cause and a judicially-issued warrant include:

(1) search of a probationer's home, *see Griffin,* 483 U.S. at 868-90;

(2) search of premises of certain highly-regulated businesses, *see New York v. Burger,* 482 U.S. 691, 699-703 (1987);

(3) work-related searches of employees' desks and offices, *see O'Connor v. Ortega,* 480 U.S. 709, 721-26 (1987);

(4) search of student's property by school officials, *see New Jersey v. T.L.O.,* 469 U.S. 325, 337-43 (1985);

(5) visual body cavity searches of prison inmates, *see Bell v. Wolfish,* 441 U.S. 520, 558-60 (1979);

(6) toxicology tests of railway employees who are involved in certain accidents or violate certain safety rules, *see Skinner,* 489 U.S. at 618–34; and

(7) toxicology tests for employees of the United States Customs Service seeking transfer or promotion to certain positions, *see Treasury Employees,* 489 U.S. at 665–79.

We first address whether this is a "special needs" situation. Wisconsin has a strong public policy of providing all relevant information to a trial court charged with the responsibility of sentencing a criminal defendant. *State v. McQuay,* 148 Wis. 2d 823, 827, 436 N.W.2d 905, 906–07 (Ct. App. 1989), *rev'd on other grounds,* 154 Wis. 2d 116, 452 N.W.2d 377 (1990). The withholding of relevant sentencing information is against public policy. *Grant v. State,* 73 Wis. 2d 441, 448, 243 N.W.2d 186, 190 (1976). The United States Supreme Court has stated, "Highly relevant—if not essential—to his [the sentencing court's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York,* 337 U.S. 241, 247 (1949).

Among the factors which a sentencing court properly considers is whether the crime is an isolated act or a pattern of conduct. *McQuay,* 154 Wis. 2d at 126, 452 N.W.2d at 381. "The *responsibility* of the sentencing court is to acquire full knowledge of the character and behavior pattern of the convicted defendant before imposing sentence." *State v. Rush,* 147 Wis. 2d 225, 230, 432 N.W.2d 688, 691 (Ct. App. 1988) (emphasis in original). In addition, the court must consider the need for protection of the public. *Elias v. State,* 93 Wis. 2d 278, 284, 286 N.W.2d 559, 561 (1980).

Here, the sentencing court was confronted with the important decision of whether to return Guzman, a convicted felon drug dealer, to the public domain on probationary status. The court's remarks at the opening of the initial sentencing proceeding indicate that it was leaning towards this sentencing alternative. Understandably, then, the court pondered whether Guzman truly had "reformed" and the effect of probation on the public's interest and safety.[5] Although not in a sentencing context, the law has recognized public safety concerns as "special needs" which may justify departure from probable cause and warrant requirements. *See Skinner,* 489 U.S. at 619-20, 627. The rights of the public are a primary consideration in any sentencing. *McQuay,* 154 Wis. 2d at 126, 452 N.W.2d at 381. The sentencing court's need for information on these relevant sentencing factors support the state's argument that this is a "special needs" situation.

The law has also recognized that certain searches of probationers (*see Griffin,* 483 U.S. at 868-90) and prisoners (*see Wolfish,* 441 U.S. at 558-60) represent "special needs" situations. Using a similar approach, we recently held that the apprehension of a parolee without the usual warrant and probable cause requirements constitutes "special needs." *State v. Pittman,* 159 Wis. 2d 764, 771, 465 N.W.2d 245, 248 (Ct. App. 1990). Akin to the "special needs" presented by these situations are those confronting a sentencing court when a search of the defendant is necessary in order to obtain relevant sentencing information.

---

[5]At the initial sentencing hearing, the trial court observed, "If I'm . . . going to put the public's neck on the line, then I am going to make it as sure as I can that I'm doing something that will not harm the public in terms of drug dealing in the future."

We conclude that when a sentencing court is considering the sentencing alternative of probation in a drug-related case and the court needs to satisfy itself that the public's interest and safety are not jeopardized by such a sentence, a "special needs" condition exists such that the usual probable cause and warrant requirements may not pertain. The question then becomes whether this "special need" justifies the privacy intrusion absent a warrant or probable cause. *See Skinner,* 489 U.S. at 621.

## NECESSITY FOR A JUDICIAL WARRANT

As to whether the "special needs" presented by this sentencing nonetheless required a judicially issued search warrant, we first address what we view as the most important consideration—Guzman's status as a convicted felon on the brink of sentencing.

Our supreme court's discussion of a probationer's status under the fourth amendment is instructive on this question. We noted this same language in *Pittman:*

> If there is to be an exception to the requirements of the fourth amendment granting probation agents a limited right to search or seize a probationer without a warrant, the foundation for this exception lies in the nature of probation itself. Probation, like parole, "is an integral part of the criminal justice system and has as its object the rehabilitation of those convicted of crime and the protection of the state and community interest." [Citation omitted.] . . .
>
> A sentence of probation places the probationer "in the custody of the department" subject to the conditions of probation and rules and regulations of the Department of Health and Social Services . . ..

> The imposition of these conditions, rules and regulations demonstrates that *while a probationer has a conditional liberty, this liberty is neither as broad nor as free from limitations as that of persons who have not committed a crime. The expectations of privacy of a person on probation cannot be the same as the expectations of privacy of persons not on probation. It is only the reasonable expectations of privacy which the fourth amendment protects.* [Footnote omitted.] Conditions of probation must at times limit the constitutional freedoms of the probationer. [Emphasis added.]

*Pittman,* at 768-69, 465 N.W.2d at 246-47 (quoting *State v. Tarrell,* 74 Wis. 2d 647, 653-54, 247 N.W.2d 696, 700-01 (1976)).

We conclude that this logic applies with equal persuasion to a convicted offender awaiting sentencing. Guzman cannot reasonably expect the full enjoyments of privacy protection when he has been convicted, is awaiting sentencing, and then urges a sentencing alternative which invokes considerations of the public's interest and safety. If probation itself represents a situation where judicially issued warrants are not required, we conclude that a sentencing proceeding which seeks to determine whether an offender is an appropriate candidate for probation should also not be so constrained.

If certain forms of employment may diminish privacy expectations of noncriminal citizens even as to personal searches, *see Treasury Employees,* 489 U.S. at 671, such diminished expectations must certainly apply to those convicted of a felony where the facts show a "special need."

Moreover, the government's interest in dispensing with the warrant requirement is at its strongest when, as

with drug tests, the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search. *Skinner,* 489 U.S. at 623.

We conclude that a warrant is not essential to render the intrusion here reasonable under the fourth amendment.

## PROBABLE CAUSE

As a general matter, even where a warrant is not required, a search must be supported by probable cause, or at least individualized suspicion, to believe that the person to be searched has violated the law. *Id.* at 624. However, in limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of probable cause or individualized suspicion, a search may be reasonable despite the absence of such suspicion. *Id.*

Here again, expectation of privacy considerations are relevant. *See id.* at 624–27. In fact, we consider them paramount in a case such as this. Here we recall, without fully repeating, our earlier discussion on this point. Suffice it to say again that Guzman, as a convicted felon awaiting sentencing, cannot reasonably expect the full privacy protections, including probable cause requirements, usually accorded the ordinary citizen.

In addition, the probable cause standard "is peculiarly related to criminal investigation." *Treasury Employees,* 489 U.S. at 667. While this was a criminal prosecution, the purpose of the search was not to uncover further suspected criminal activity by Guzman,

but rather to more fully inform the court on relevant sentencing factors.

The nature of the privacy intrusion is also relevant to a probable cause inquiry. *See Skinner,* 489 U.S. at 626. We are not insensitive to the requirement that Guzman perform an excretory function in order to comply with the trial court's order that he submit a urine sample. This raises concerns not implicated by blood or breath tests. *Id.* On the other hand, the giving of a urine sample does not entail the direct bodily intrusion associated with a blood test. Regardless, the United States Supreme Court has held that the giving of a blood, breath, or urine sample for testing cannot, by itself, be said to infringe significant privacy interests. *Id.* at 633.[6] Weighed against the sentencing court's legitimate need for relevant and current information on Guzman's "drug status" at the time of the initial sentencing proceeding, we conclude that Guzman's privacy interest must defer.

Therefore, under the facts of this case, we conclude that a prior showing of probable cause or individualized suspicion was not a prerequisite to the type of search authorized by the sentencing court.

## CONCLUSION

Under the facts of this case, the sentencing court's compelling interest for important and relevant sentencing information constituted a "special needs" situation. These needs outweighed Guzman's privacy interests to the extent that a warrant and attendant probable cause

---

[6]We also note that the trial record is sparse as to the specifics regarding the taking and collection of the urine sample from Guzman. We simply know it occurred. We don't know the attendant circumstances or any insensibilities beyond those suggested by the event itself. Guzman raises no issues on those points.

were not required. The search conducted as a result of the sentencing court's order was reasonable under the fourth amendment of the federal constitution and art. I, sec. 11 of the Wisconsin Constitution.[7]

*By the Court.*—Judgment and order affirmed.

---

[7]Because we uphold the search, we need not address the state's alternative argument that the "good faith" exception to the exclusionary rule under *United States v. Leon*, 468 U.S. 897 (1984), salvages the testing procedure and results in this case.