# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Farris*, 2012 IL App (3d) 100199

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JACQUELINE FARRIS, Defendant-Appellee. |
| District & No. | Third District<br>Docket Nos. 3-10-0199, 3-10-0220 cons. |
| Filed | April 10, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An order suppressing the results of a blood alcohol test based on blood drawn by force from defendant by hospital personnel pursuant to a police officer's instructions was affirmed, since the officer lacked the statutory authority to use force in taking a sample from defendant. |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, Nos. 09-DT-135A, 09-DT-135; the Hon. Kenneth A. Leshen and the Hon. Susan Tungate, Judges, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

John J. Boyd, State's Attorney, of Kankakee (Terry A. Mertel and Thomas D. Arado (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Leonard Sacks (argued), of Sacks, Gubbins & Regas, of Kankakee, for appellee.

Panel

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Wright concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1  This matter is on consolidated appeals filed by the State. In case number 3-10-0199, the State appeals from the granting of the defendant's petition to rescind a statutory summary suspension. In case number 3-10-0220, the State appeals from an order of the circuit court granting the defendant's motion to suppress evidence from a blood alcohol test using blood forcibly drawn from the defendant by hospital personnel at the instruction of a police officer. The State filed a certificate of impairment and a timely notice of appeal.

¶ 2             FACTS

¶ 3  On May 12, 2009, the defendant was arrested for driving under the influence of alcohol (DUI). 625 ILCS 5/11-501(a)(2) (West 2008). The DUI ticket was docketed as No. 09-DT-135. Following notification of defendant's arrest, the Illinois Secretary of State issued a notice to the defendant indicating that she would receive a 12-month statutory summary suspension of her driver's license. The defendant filed a petition to rescind the statutory summary suspension alleging that: (1) she was not properly placed under an arrest for DUI; (2) the arresting officer did not have reasonable grounds to believe that she was driving or in actual physical control of a motor vehicle while under the influence of alcohol; and (3) she was not properly warned by the arresting officer as provided in section 11-501.1 of the Vehicle Code. 625 ILCS 5/11-501.1 (West 2008). The petition to rescind the statutory summary suspension was docketed as No. 09-DT-135A. The defendant had previously filed a motion *in limine* to suppress evidence of the results of blood testing done without her consent in the DUI proceeding. By agreement of the parties, a single evidentiary hearing was held on the motion to suppress evidence and the petition to rescind the statutory summary suspension, with the court's ruling on the admissibility of the blood test results to apply to

-2-

both proceedings.

¶ 4    Officer Kevin Orms of the Bradley, Illinois, police department testified that, on May 12, 2009, at approximately 10:30 p.m., he was called to the scene of an accident at the corner of Schuyler Avenue and Brookmont Boulevard. Upon his arrival at the scene, he encountered the defendant sitting in her vehicle. The defendant told him that she had hit her lip on the dashboard and that her head was hurting. Orms testified that he immediately noted the odor of an alcoholic beverage coming from the defendant's breath. Orms called an ambulance, which transported the defendant to Riverside Hospital in Kankakee, Illinois. Orms followed the ambulance in his squad car. Orms accompanied the defendant into the emergency treatment area. According to Orms's testimony, the defendant was verbally abusive and belligerent toward him and toward the emergency department staff attending the defendant. Orms testified that the defendant repeatedly stated "take me to fucking jail."

¶ 5    Orms testified that the defendant continued to swear and act belligerent while he read the statutory "Warning to Motorists" to the defendant. In accordance with the warning, Orms sought consent from the defendant for a blood draw. The defendant refused consent. Orms then contacted his commanding officer, who instructed him to take a blood sample. Orms then instructed a nurse to take a sample of the defendant's blood. Orms and another officer stood by while a doctor, a nurse, and another emergency department staff member held the defendant down and forcibly drew blood. One person was on either side of the defendant, each holding a wrist and shoulder, while another person held her legs as the nurse drew blood from one of the defendant's arms inside of the elbow. The entire process took approximately four minutes.

¶ 6    Orms issued a "Law Enforcement Sworn Report" which indicated that the defendant voluntarily submitted to chemical testing which disclosed an alcohol concentration of 0.285.

¶ 7    The defendant testified that, on May 12, 2009, she was involved in an automobile accident in which her car hit another car. She testified that she never lost consciousness and had only minor injuries, including a cut to her lip from hitting the dashboard. She stated that, as soon as she arrived at the hospital, demands were made that she consent to a blood draw. She refused, stating that she did not believe a blood test was necessary. She was then forcibly held down and blood was extracted from her right arm. On cross-examination, the defendant admitted to consuming approximately three alcoholic beverages in the three hours prior to the accident. She also admitted to physically resisting the blood draw, including squirming her arms back and forth and kicking her legs.

¶ 8    Following the hearing, the trial court issued a written order granting the defendant's motion *in limine* barring the State from using the blood test results in the proceeding regarding the statutory summary suspension. Shortly thereafter, the State filed a motion to amend the sworn report, seeking to remove the check mark from the box on the report indicating that the defendant had submitted to chemical testing, and, instead, to check the box indicating "because you refused to submit to or failed to complete testing, your driver's license and/or privileges will be suspended for a minimum of 12 months." Following argument of counsel on the motion, the circuit court granted the motion to amend the sworn report. Approximately a week later, however, the court reversed its prior ruling and denied

the State's motion to amend the officer's sworn report. The docket entry stated as follows:

> "The Court has again reviewed the cases provided by counsel and notes that each of the cases is fact specific. In the instant case, the proposed amendment completely changes the predicate for the suspension as well as the duration of the suspension. Consequently the court hereby reverses itself and denies the State's motion."

¶ 9 The defendant was allowed to amend her petition to rescind the statutory summary suspension to allege, as a basis for rescission, an allegation that "the police physically forced me to give blood and that result was barred by the court and therefore I was not properly tested and did not test over .08." The trial court granted the amended petition to rescind the statutory summary suspension. The State filed a timely notice of appeal.

¶ 10 Thereafter, the trial court issued a written order in the DUI proceedings granting the defendant's motion to suppress evidence, holding that law enforcement officials may not use force to obtain a blood sample. In reaching its conclusion, the trial court relied upon *People v. Jones*, 214 Ill. 2d 187, 199-200 (2005). The State filed a timely certificate of impairment and notice of appeal.

¶ 11                                    ANALYSIS
¶ 12                        1. Suppression of Blood Test Results

¶ 13 The State maintains that the trial court erred in granting the defendant's motion to suppress the blood test results based upon a conclusion that law enforcement is not permitted to use force to extract a blood sample. The trial court held that a law enforcement officer lacks the statutory authority to forcibly extract blood in instances where the defendant has refused consent. Questions of statutory interpretation are reviewed *de novo*. *Jones*, 214 Ill. 2d at 193.

¶ 14 Section 11-501.2(c)(2) of the Vehicle Code allows chemical testing without consent where a police officer has probable cause to believe that a vehicle driven by an individual under the influence has caused the death or personal injury of another. 625 ILCS 5/11-501.2(c)(2) (West 2008) ("[I]f a law enforcement officer has probable cause to believe that a motor vehicle driven by or in actual physical control of a person under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds *** has caused the death or personal injury to another, that person shall submit, upon the request of a law enforcement officer, to a chemical test or tests of his or her blood, breath or urine ***."). The statute is silent, however, on whether testing without consent is authorized in situations not involving death or personal injury to another. See *Jones*, 214 Ill. 2d at 194.

¶ 15 The issue of whether testing without consent in the absence of death or personal injury is permitted under the Vehicle Code was first addressed by our supreme court in *Jones*, which held that testing without consent in situations lacking death or personal injury to another was permitted despite the statutory language that seemed to limit testing to those situations. *Jones*, 214 Ill. 2d at 199-200. The *Jones* court held that testing without consent did not violate constitutional protections against unreasonable search and seizure where there was probable cause to believe the defendant was intoxicated and the delay caused by obtaining a search warrant might result in loss of evidence of intoxication, given the natural

dissipation of the alcohol in the defendant's blood. *Jones*, 214 Ill. 2d at 200 (citing *Schmerber v. California*, 384 U.S. 757, 768-72 (1966)). The *Jones* court also held that the statutory language of section 11-501.2(c)(2), which expressly provided for testing without consent in situations involving death or personal injury to another, did not implicitly outlaw such testing where death or personal injury to another had not occurred. Finding the statute to be ambiguous, the court, relying in part on legislative history, noted that no statutory right to refuse testing existed prior to enactment of section 11-501.2(c)(2). The court stated that it was "unwilling to construe the language of section 11-501.2(c)(2) as creating a right to refuse chemical testing." *Jones*, 214 Ill. 2d at 199-200. While the *Jones* court conclusively held that a defendant did not have a constitutional or statutory right to refuse a request for chemical testing, regardless of the lack of death or personal injury to another, the court did not state whether physical force could be used to collect a sample for testing.

¶ 16    On the question of force, the *Jones* court issued a "clarification" as follows:

"For purposes of clarification, our holding in this case does not give law enforcement officers unbridled authority to order and conduct chemical tests. We do not suggest that a DUI arrestee's lack of a right to refuse chemical testing under section 11-501.2(c)(2) permits law enforcement officers to use physical force in obtaining blood, urine, and breath samples. The Vehicle Code already eliminates any advantage a DUI arrestee might hope to gain from refusing chemical testing." *Jones*, 214 Ill. 2d at 201.

¶ 17    In the instant matter, the trial court relied upon this discussion in *Jones* to find that nothing in the Vehicle Code permits law enforcement officers to use physical force in obtaining blood, urine, or breath samples. On appeal, the defendant-appellee suggests that the circuit court was correct in reading *Jones* to indicate our supreme court's rejection of the use of force to collect samples where the defendant does not have a right to refuse a request to submit a sample for testing. The State argues that the supreme court's statement that law enforcement officers did not have "unbridled authority" to order and conduct chemical tests did not mean that an officer could not use reasonable force to obtain a sample.

¶ 18    The State maintains that the Vehicle Code implicitly authorizes an arresting officer to use "reasonable force" to obtain a sample if the defendant refuses to cooperate in the extraction of a sample of his or her bodily fluid. The State cites *State v. Krause*, 484 N.W.2d 347 (Wis. Ct. App. 1992), where the Wisconsin appellate court upheld a DUI conviction of a defendant who had been hog-tied and held down by his feet with a pillowcase placed over his head while a lab technician drew blood. The court held that, as long as the extraction of fluids passed federal constitutional muster under *Schmerber v. California*, 384 U.S. 757 (1966), the law of Wisconsin did not prohibit the forced collection methods employed by the arresting officer. *Krause*, 484 N.W.2d at 348. The *Krause* court then noted that, under *Schmerber*, a forcible blood draw will not violate the fourth amendment if the blood draw is reasonable, *i.e.*, (1) drawn incident to an arrest; (2) with a "clear indication," rather than "mere chance" that the desired evidence will be found in the blood sample; and (3) exigent circumstances exist. *Krause*, 484 N.W.2d at 350 (citing *Schmerber*, 384 U.S. at 769-71). The *Krause* court determined that all three criteria for reasonableness were present. The *Krause* court also determined that the degree of force necessary to obtain the sample was subject to a further constitutional test of reasonableness which required a balancing of the defendant's fourth

amendment right to be free from "unreasonable" search and seizure with the legitimate governmental interest of law enforcement. *Krause*, 484 N.W.2d at 351. According to the *Krause* court, an officer's level of force used was "objectively reasonable" where several factors balanced in favor of the force used: (1) the environment where the test was conducted; (2) the severity of the crime at issue; (3) whether the defendant posed an immediate threat to the safety of officers or others; (4) whether the defendant was actively resisting; (5) whether the police refused a reasonable request for an alternative test; and (6) the degree of the State's need for the test. *Krause*, 484 N.W.2d at 352.

¶ 19    The State suggests that this court undertake the same analysis of reasonableness that was undertaken by the *Krause* court. It further suggests that, if this court were to do so, it would determine that the blood draw in the instant case passed constitutional muster, *i.e.*, (1) the blood was drawn incident to an arrest; (2) the officer's observations of an odor of an alcoholic beverage on the defendant's breath and the defendant's belligerent attitude gave a clear indication rather than a mere chance that the blood would register over the legal limit; and (3) exigent circumstances existed in the need to obtain the sample before the alcohol level in the blood dissipated.

¶ 20    Likewise, the State suggests that the force was objectively reasonable in the instant matter because: (1) the test was conducted in an appropriate environment, *i.e.*, a hospital; (2) DUI is a severe crime for which a forced blood draw is necessary; (3) the defendant's belligerent attitude posed a threat to the safety of the officers and the hospital personnel; (4) the defendant was actively resisting the forced blood draw; (5) the defendant made no request of an alternative means of testing; and (6) the State's need for the blood sample was great since scientific test results are much better evidence of DUI than the arresting officer's observations and the inference of guilt that can be drawn from her refusal to submit to testing.

¶ 21    In addition to *Krause* and *Schmerber*, the State cites to several cases which stand for the proposition that forced blood draws are objectively reasonable and can pass constitutional muster under the fourth amendment. See *State v. Clary*, 2 P.3d 1255, 1256 (Ariz. Ct. App. 2000); *Carleton v. Superior Court*, 216 Cal. Rptr. 890 (Cal. Ct. App. 1985); *State v. Worthington*, 65 P.3d 211 (Idaho Ct. App. 2002); *State v. Lanier*, 452 N.W.2d 144 (S.D. 1990). However, we find each of these cases to be irrelevant to the question before us, which is whether the trial court correctly held that a forced blood draw was not permitted under the Vehicle Code. The trial court, relying upon our supreme court's holding in *Jones*, held that force is not permitted under the statute. Specifically, the trial court relied upon the *Jones* court's "clarification" that it was "not suggest[ing] that a DUI arrestee's lack of a right to refuse chemical testing under section 11-501.2(c)(2) permits law enforcement officers to use physical force in obtaining blood, urine, and breath samples." *Jones*, 214 Ill. 2d at 201.

¶ 22    Reviewing the trial court's holding *de novo*, we hold that the trial court was correct in its analysis of the supreme court's holding. The court clearly wanted to "clarify" that, although it was holding in *Jones* that a defendant did not have a statutory right to refuse to comply with a request for a blood sample, law enforcement had no statutory right to use force to extract said sample if the defendant refused to cooperate. That is a clear and unambiguous interpretation of the court's holding. That our supreme court did not see a need for forced

sample collection is made even more clear by its observation that taking a blood sample by force served no legitimate law enforcement purpose. As the *Jones* court noted, the defendant's refusal to comply with the request for a sample, in and of itself, is sufficient to justify a statutory summary suspension of the defendant's driver's license, the purpose of which is to protect the public from intoxicated motorists.

¶ 23   Moreover, in *Jones* our supreme court was quite clear that there is no practical need for physical force in obtaining bodily fluid samples since the Vehicle Code eliminates any advantage a DUI arrestee might hope to gain from refusing chemical testing:

"Under section 11-501.2(c)(2), if a DUI arrestee refuses to submit to chemical testing, evidence of the refusal is admissible in the arrestee's DUI prosecution. 625 ILCS 5/11-501.2(c)(1) (West 2002); see also *People v. Edwards*, 241 Ill. App. 3d 839, 843 (1993) (indicating that a defendant's refusal to submit to blood testing has 'some tendency to indicate a consciousness of guilt' and is thus relevant and admissible in a DUI prosecution). In addition, refusal to submit will result in the summary suspension of the arrestee's driving privileges. This penalty is the same as that imposed where tests are conducted and the results indicate a blood-alcohol concentration over the legal limit. See 625 ILCS 5/11-501.1(c) (West 2002)." *Jones*, 214 Ill. 2d at 201-02.

Thus, the inference of guilt from a defendant's refusal to comply with a request for testing is sufficient to protect the public interest in the prosecution of DUI tickets, and the use of force to secure bodily fluid samples adds nothing to the protection of the public. *Jones*, 214 Ill. 2d at 202.

¶ 24   The State's argument that the forced taking of a blood sample does not violate the defendant's fourth amendment right to be free from unreasonable search and seizure fails to address the trial court's finding that the arresting officer lacked statutory authority to use force to obtain a blood sample. We affirm the trial court's holding that police officers lack the statutory authority to use force in taking samples of bodily fluids under section 11-501.2(c)(2) of the Vehicle Code.

¶ 25                           2. Motion to Amend Sworn Report

¶ 26   An officer's sworn report may be amended at the hearing on the petition to rescind the statutory summary suspension. *People v. Badoud*, 122 Ill. 2d 50 (1988). The State suggests that the standard of review is *de novo* since the matter involves a matter of statutory construction and there is no issue of witness credibility. See *Village of Mundelein v. Thompson*, 341 Ill. App. 3d 842 (2003). The defendant suggests that the standard of review is abuse of discretion since the court has the discretion to allow a motion to amend a pleading. See *People v. Wyzgowski*, 323 Ill. App. 3d 604, 605-06 (2001). In a proceeding to rescind a statutory summary suspension, the officer's sworn report serves a function analogous to a complaint in a civil proceeding. *Badoud*, 122 Ill. 2d at 54. As such, the officer's sworn report plays a unique role in a statutory summary suspension hearing because, like a complaint in a civil case, it is the jurisdictional step that starts the proceeding. *People v. Palacios*, 226 Ill. App. 3d 341 (1994). Given the fact that the sworn report stands as the complaint, we will review the trial court's denial of the State's motion to amend the sworn

report for an abuse of discretion. An abuse of discretion occurs where no reasonable person would agree with the position adopted by the trial court. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 176 (1997). Thus, a trial court cannot be said to have abused its discretion if reasonable persons could differ as to its decision. *In re Adoption of D.*, 317 Ill. App. 3d 155, 160 (2000).

¶ 27 In order to determine whether the trial court has abused its discretion in denying an amended complaint, courts generally look to four factors: (1) whether the proposed amendment would cure the defective pleading; (2) whether the other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the complaint could be identified. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 28 Here, the trial court denied the motion to amend the officer's sworn report because the "proposed amendment completely changes the predicate for the suspension as well as the duration of the suspension." While the court did not articulate its ruling in terms of prejudice and surprise, it would not be unreasonable to agree with the position adopted by the trial court. To have allowed the officer's sworn report to be amended certainly would have prejudiced the defendant and likely introduced an element of surprise. Additionally, the timing of the motion to amend could be called into question, as well as whether there were previous opportunities to amend the sworn report. Given the record, we cannot say that the trial court abused its discretion in denying the motion to amend the officer's sworn report.

¶ 29                                  3. Statutory Summary Suspension

¶ 30 The State lastly maintains that the trial court erred in granting the defendant's petition to rescind her statutory summary suspension. The State suggests that the standard of review is *de novo*. *Village of Mundelein*, 341 Ill. App. 3d at 848. Here, given the fact that the trial court properly suppressed the results of the blood alcohol test, and given the fact that the sworn officer's report did not indicate that the defendant refused a request for testing, we find that the trial court was correct in granting the petition to rescind the statutory summary suspension.

¶ 31                                             CONCLUSION

¶ 32 For the foregoing reasons, the judgment of the circuit court of Kankakee County is affirmed.

¶ 33 Affirmed.

¶ 34 JUSTICE WRIGHT, concurring in part and dissenting in part:

¶ 35 The police officer cited defendant for driving under the influence of alcohol pursuant to section 11-501(a)(2). The trial court granted defendant's petition to rescind the statutory summary suspension and motion *in limine*. This ruling on the motion *in limine* prevented the State from introducing the blood test results on grounds that police obtained the blood sample by force, contrary to our supreme court's ruling in *People v. Jones*, 214 Ill. 2d 187

(2005).

¶ 36    I agree *Jones* establishes that force cannot be used to compel the collection of a blood test after the driver refuses to consent to the test when the DUI violation does not involve a death or serious injury to another person. Therefore, I concur with the majority's decision affirming the trial court's decision to exclude the blood test results because the facts of this DUI violation fell under the provisions of section 11-501.2(c)(1), similar to the facts considered by our supreme court in *Jones* (*Jones*, 214 Ill. 2d 187).

¶ 37    *Jones* did not involve an accident with injuries to another person. Thus, our supreme court has not been called upon to specifically resolve whether a law enforcement officer could use some reasonable amount of physical force when compelling the collection of a required blood sample under section 11-501.2(c)(2). 625 ILCS 5/11-501.2(c)(2) (West 2008). Therefore, I dissent from that portion of the majority's decision interpreting *Jones* to forbid the use of force in all situations, including those circumstances where section 11-501.2(c)(2) applies. I feel it is premature for the majority to interpret *Jones*, in this appeal, to clearly hold that force may never be used to obtain a nonconsensual blood draw under any circumstances, including those involving the serious injury or death of another pursuant to section 11-501.2(c)(2).

¶ 38    In fact, Justice Kilbride distanced himself from the majority's reasoning in *Jones* by observing that the statutory language of section 11-501.2(c)(2) would be meaningless if a police officer could not "compel" nonconsensual testing of a DUI defendant who killed or caused serious injury to another. *Jones*, 214 Ill. 2d at 202-06 (Kilbride, J., dissenting). I consider Justice Kilbride's views to be persuasive.

¶ 39    In some situations, not presented by either the facts of *Jones* or the facts in the case at bar, authorities should be allowed to compel the collection of a blood sample when the suspected DUI driver causes death or serious harm to another, refuses to consent, and then physically resists all reasonable efforts to compel the collection of a blood sample. Obviously, the degree of force used by the authorities to compel compliance should not exceed the amount of compulsion reasonably necessary to counteract the level of resistance exerted by a combative driver who has been involved in the death of or great bodily harm to another.

¶ 40    Additionally, I dissent from the majority's holding to affirm the trial court's decision denying the State's motion to amend the officer's sworn report. An officer's sworn report, in a statutory summary suspension hearing, is analogous to a complaint or pleading in a civil proceeding and the rules of civil procedure apply. *People v. Badoud*, 122 Ill. 2d 50, 54 (1988); 626 ILCS 5/2-118.1(b) (West 2008). Section 2-616(c) of the Code of Civil Procedure provides a pleading may be amended "at any time, before or after judgment, to conform the pleadings to the proofs." 735 ILCS 5/2-616(c) (West 2008). In *People v. Pollitt*, the court recognized that amendments to defects in an officer's sworn report generally occur before or at the suspension hearing, but held that sworn reports may be amended to conform to the proofs after judgment as well. *People v. Pollitt*, 2011 IL App (2d) 091247, ¶ 19; *Mandel v. Hernandez*, 404 Ill. App. 3d 701, 707 (2010).

¶ 41    Accordingly, I believe that the trial court's denial of the State's motion to amend the

officer's sworn report after judgment, to include that defendant refused to submit to chemical testing, constituted an abuse of discretion. Based on that refusal, I conclude that the trial court erred by granting defendant's petition to rescind the statutory summary suspension in this case.

¶ 42  For these reasons, I respectfully concur in part and dissent in part.